CREIGHTON et al., appellants, *v.* VANDERLIP et al., respondents.

CONTRACT TO PAY GOLD DUST — *promissory note — merger — agreement.* A contract for the payment of gold dust, in the nature of a promissory note, is not merged in an agreement, by which the time for its payment is extended, the rate of interest reduced, and the means of paying it placed in the hands of the parties liable thereon; and this agreement cannot be introduced in evidence under the allegations of the answer that the agreement released the parties from any liability to pay the gold dust.

PROMISSORY NOTE — *merger.* A promissory note is not merged in an agreement which does not expressly defeat a right of action thereon.

AGREEMENT CONSTRUED — *situation of parties.* The situation of the parties to an agreement can be considered by the court to ascertain the meaning of the instrument.

*Appeal from the First District, Madison County.*

THIS case was tried by a jury, in November, 1870, and a verdict rendered for defendants. The court, WARREN, J., overruled the motion for a new trial, and Creighton appealed. The facts appear in the opinion.

H. N. BLAKE, for appellants.

The agreement betwen appellants and respondents, Thomas and McRoberts, is not a defense in this action. If there has been a breach of the agreement a suit would lie. 2 Pars. on Notes & Bills, 530, 531, 536, 538; *Dow* v. *Tuttle,* 4 Mass. 414; *Shed* v. *Pierce,* 17 id. 627; *Central Bank* v. *Willard,* 17 Pick. 153; *Allen* v. *Kimball,* 23 id. 473; Barclay's Mo. Dig. 96, §§ 98, 99.

The agreement shows that the note was not merged in the same. The measure of damages is fixed. The evidence relating to the capacity of the ditch, and quantity and value of water was improperly admitted. (See Agreement.) The respondents did not ask for special damages in their answer. The court erred in allowing evidence thereof and refusing to give instructions prayed for by appellants.

W. Y. LOVELL, W. F. SANDERS and S. WORD, for respondents.

Appellants rely on part of the agreement, and respondents are entitled to the whole. 2 Pars. on Cont. 499, § 3.

The note and agreement made but one contract, and it must be enforced as such.    2 Pars. on Cont. 534, 535 ; *Miller* v. *Stewart,* 9 Wheat. 681.

Appellants must show that they were without laches before they can sue on the contract.    1 Chit. Pl. 324 ; *Slater* v. *Emerson,* 19 How. 224.    The law never releases a party who is in fault.

The note was merged in the agreement, which says its stipulations are a " settlement of said suit " on the note the first time, and that it is a settlement of " all matters of dispute or difference by reason of said note being unpaid." 4 Kent's Com. 111.

The agreement, in express terms, releases respondents, Thomas and McRoberts, from any liability on the note, and was competent evidence.    16 N. Y. 535.

It was the province of the jury, not the court, to say what the actual damages were.

The case is here on the judgment roll alone.    Civ. Prac. Act, § 322 ; *Kinna* v. *Horn, ante,* 363 ; *Simonton* v. *Kelly, ante,* 329.

WADE, C. J.    This case comes into this court upon appeal from an order in the court below, overruling a motion for a new trial.

The complaint is founded upon a written instrument, of which the following is a copy:

"VIRGINIA CITY, M. T., *Nov.* 5, 1867.

" Six months after date we, or either of us, promise to pay to Norval Harrison and Columbus Hampton, or order, two hundred and twenty-two ounces four and one-half pennyweights of clean gulch gold dust, or its value, with interest at the rate of five per cent per month until paid.

"F. D. VANDERLIP,
"W. H. THOMAS,
"JOHN McROBERTS."

The complaint avers, that for a valuable consideration on the 16th day of March, 1868, this note or contract was trans-

ferred by Harrison & Hampton to plaintiffs, and that plaintiffs are now the owners thereof, and that on the 18th day of July, 1868, the plaintiffs entered into an agreement with said Thomas and McRoberts, whereby the rate of interest to be paid on said instrument was to be computed at the rate of five per cent per month from the 16th day of March, 1868, to the 18th day of July, 1868, and at the rate of three per cent per month from the 18th day of July, 1868, until the same should be paid. That no part of the principal or interest has been paid, and that the same is now due to plaintiffs.

The defendant Vanderlip does not answer. The separate answer of defendants, McRoberts and Thomas, admits the execution and delivery of the note or contract described in complaint, the assignment thereof to plaintiffs on the 16th day of March, 1868, and the agreement as to the rates of interest as specified in said complaint. But said defendants, defending against the cause of action set forth in the complaint, aver, that on the 18th day of July, 1868, at Virginia City, Montana Territory, said plaintiffs, under the firm name and style of P. A. Largey (that being one of the firm names of said company), entered into an agreement with said defendants, Thomas and McRoberts, for a valuable consideration, whereby it was promised and agreed, in consideration of the covenants and promises in said contract contained, to be done and performed by said defendants, the said plaintiffs did then and there and thereby release these defendants from any and all liability on the note or contract in the complaint set forth and described.

The agreement whereby these defendants claim to be released and discharged from the obligations of the note or contract upon which this suit is instituted, and from all liability thereon, is in the words and figures following, to wit:

"AGREEMENT."

"This agreement, made and entered into on this 18th day of July, A. D. 1868, by and between Patrick A. Largey

of the first part, and William H. Thomas and John McRobers of the second part, witnesseth:

"WHEREAS, the said Thomas and McRoberts did, on the 5th day of November, A. D. 1867, with one Frederick D. Vanderlip, make, execute and deliver to Columbus Hampton and Norval Harrison, their certain promissory note, whereby they promised to pay and did obligate themselves to deliver to said Hampton and Harrison, for a valuable consideration, the amount of 222 ounces 4½ pennyweights of clean gold dust, or the sum of $4,000 in gold, the value of said gold dust, with interest from date, at the rate of five per cent per month until paid, and payable in six months from date of said note, which said note was secured by said Vanderlip by a certain mortgage duly executed and recorded; a reference for a full and perfect description of the same is hereby made to the copy of the same hereto attached and made part of this agreement; and,

"WHEREAS, the said Columbus Hampton and Norval Harrison did, for a valuable consideration, sell, assign, transfer and set over said note and mortgage, for a valuable consideration, on the 16th day of March, A. D. 1868, to E. Creighton & Co.; and,

"WHEREAS, the said Vanderlip, Thomas and McRoberts have failed to pay said note; and,

"WHEREAS, the said P. A. Largey has commenced suit on the same, in the district court of the first judicial district, in and for the county of Madison and Territory of Montana, by attachment; and,

"WHEREAS, the said writ of attachment has been levied upon certain property of said Thomas and McRoberts;

Now, therefore, in consideration of the sum of $1 each to the other paid, by the parties to this agreement, and the further consideration of the settlement of said suit, and all matters in dispute in difference by and between the said Largey, Thomas and McRoberts, by reason of said note being unpaid, it is agreed:

"1. That said Largey, his heirs or assigns, shall dismiss

his said action in the district court now pending, and release all of the said Thomas and McRoberts.

"2. That the said Largey, his heirs or assigns, agree with the said Thomas and McRoberts, that the only interest to be computed at five per cent per month, from the 16th day of March, A. D. 1868, until the 18th day of July, 1868; and from and after that day the interest to be computed, and it is expressly agreed that though the said note calls for five per cent interest per month, the same shall only bear interest and be computed as against the said Thomas and McRoberts, at the rate of three per cent per month until paid; and that the said Largey agrees and binds himself, his heirs and assigns, to forbear suit, to prosecute or in any manner to enforce the collection of said note or interest on the same, as against or from the said Thomas and McRoberts, for the space of one year from the said date of July 18, 1868.

"3. It is further agreed, that in order to enable the said Thomas and McRoberts, their heirs and assigns, to pay said note and interest out of the property named in said mortgage, to wit: the ditch, right of water and mining ground therein named, that the said Largey agrees and binds himself to at once deliver the quiet and peaceable possession of all the property named in said mortgage to the said Thomas and McRoberts upon the following terms and conditions, to wit: that is to say, that said Thomas and McRoberts shall take charge of all of said property, use and work the same to the best advantage, by the sale of water or the working of said mining ground, as in the judgment of the parties hereto may seem best for the interests of all the parties hereto ; and after deducting all necessary expenses and charges, shall pay all moneys and gold dust that may come into the hands of said Thomas and McRoberts from said property, from any source therefrom unto the said P. A. Largey, his heirs or assigns ; which money or gold dust so paid and received by said Largey shall be appropriated and applied by him or his assigns, in the manner following, to wit :

"First, to the payment of a certain promissory note or to

any sum that may be now due thereon, or the interest that may be due or to become due, which said note is also named and set out in said mortgage and now owned by said P. A. Largey, calling for 222 ounces, 4½ dwts. of clean gold dust, or equal to $4,000 in gold, with interest from date until paid at five per cent per month, and dated November 5, 1867, and signed by F. D. Vanderlip and one James McEvily; and after the payment of said note and interest, as aforesaid, then the said P. A. Largey or his assigns shall apply all money or gold dust as paid by said Thomas and McRoberts from said property named in said mortgage, after deducting actual expenses of said Thomas and McRoberts as aforesaid, with the interest to be computed at three per cent per month, as named in said note from said 18th day of July, 1868, until paid; and that when said several notes with the interest thereon shall have been paid said Largey or his assigns as aforesaid, by said Thomas and McRoberts, then and in that case, it is agreed and the right of possession and occupancy to all of the property named in said mortgage is hereby given and continued in and to said Thomas and McRoberts or their assigns, for such length of time as may be necessary, by reasonable use and work of said ditch and ground as aforesaid until the said Thomas and McRoberts shall have re-imbursed and paid back to themselves all the money or gold dust, with interest, at said rate that they may have paid upon said note, as signed by said Vanderlip, McRoberts and Thomas, to said P. A. Largey; and when so re-imbursed and paid back in full, then they shall, without process of law, return and deliver the property so held by them to the said Largey or his assigns.

"4. It is further agreed and understood by and between the said parties hereto, that in the event that said ground and the rent or sale of water from said ditch, or the diversion of the water from such ditch, if by any, or from any of, said causes, the said Thomas and McRoberts are prevented from paying said notes last named and the interest thereon, then and in that case, after reasonable time and fair effort by said Thomas and McRoberts, then and in that case the said P. A. Largey binds himself, his heirs

and assigns, to rebate and not require or demand any interest whatever of the said Thomas and McRoberts, but that all payments that may have been made by them shall be deemed, and are hereby declared to be, payments of the debt and principal of said note.

"5. It is further agreed and understood that to the enjoyment and fulfillment of the promises, agreements and undertakings, as herein expressed, that said P. A. Largey or his assigns agree and bind themselves that they will place the said Thomas and McRoberts in the quiet possession of all the property herein named, and that he will maintain and keep good said possession without, and free of, expense to said Thomas and McRoberts.

"6. It is further agreed, that to secure the payment of said last mentioned note and the faithful execution of this agreement, that the said Thomas and McRoberts shall cause to be made and executed to the said Largey or his assigns a mortgage by G. W. Allen of an undivided one-fourth interest in all the property now owned by the Highland and Pine Grove Fluming Company, of Madison county, M. T., and of three hundred feet square of mining ground on East Bummer Dan Hill, in Fairweather district, county and Territory aforesaid.

"7. It is further agreed and understood by and between the parties hereto, that for the faithful and perfect execution and performance of each and every agreement and undertaking as herein expressed, we do bind ourselves, each in the penal sum to the other, of ten thousand dollars, to be well and truly made.

"Witness whereof we have each set our hands and seals, this 18th day of July, A. D. 1868.

"P. A. LARGEY,        [L. S.]
"W. H. THOMAS,        [L. S.]
"JOHN McROBERTS. [L. S.]

"Signed in our presence,
"WM. Y. LOVELL,
"G. W. ALLEN.
"Done in duplicate."

To the introduction of this agreement in evidence by the defendants, the plaintiffs objected, upon the ground that it is no defense to the contract for gold dust; that it does not support the averments of the answer, and that, if plaintiffs are liable thereon, their proper remedy is a suit upon the agreement. These objections to the agreement were over-ruled, and the agreement received in evidence. This action of the court is assigned for error, and the main question presented by this record is, as to the admissibility of the foregoing agreement in evidence, under the pleadings in this case.

The defendants aver, in their answer, that the agreement of July 18, 1868, released them from all liability upon the contract for gold dust, and that they are wholly discharged from the obligations of the same. It is claimed by defend-ants that this agreement is a merger of the gold dust con-tract, that it was designed to, and that it does, take the place of said contract, and that, by reason of this agreement, a right of action upon the contract or note in complaint de-scribed has ceased.

It thus becomes necessary to ascertain, by careful analysis and interpretation, the true intent and meaning of the agree-ment of July 18, 1868.

At the time this agreement was made, the contract for gold dust (or note, as I will hereafter call it for convenience) had become due, and a suit in attachment had been com-menced against defendants, including defendant Vanderlip, and this situation of the parties we have the right to con-sider, to enable us to properly interpret their acts. The plaintiffs were demanding their pay upon the note then due and unpaid; the defendants could not meet this obligation, and this agreement was the result of this situation. Was it the intention of the parties thereto, and did they in terms merge the note in the agreement, and thereby abandon and lose their rights and interests in the note? The answer to this question will decide the case.

The stipulations of the agreement:

(1.) Caused the suit in attachment to be dismissed and settled.

(2.) It changed the rate of interest on the note from five per cent to three per cent per month.

(3.) It extended the payment of the note for one year, from July 18, 1868.

(4.) It stipulated to deliver ditch and mining property therein described to defendants Thomas and McRoberts, and from the proceeds thereof to pay first a note held and owned by plaintiffs against Vanderlip and one James McEvily, for two hundred and twenty-two ounces and four and one-half pennyweights of gold dust; and, second, to pay the note in the complaint described; and, third, to remain in possession of said property, and to work the same until they should fully re-imburse themselves, and pay back to themselves all the moneys or gold dust that they should so pay on said notes.

(5.) If, from any cause, defendants are hindered or prevented, by rent or sale of ditch and mining property, from paying notes, then the plaintiffs bind themselves to rebate all interest on note in complaint described, and the payments that have been made to be applied upon the principal of said note.

(6.) To further secure the payment of said note, the defendants agree to cause one George W. Allen to execute and deliver to plaintiffs a mortgage of one undivided one-fourth interest in the Highland and Pine Grove Fluming Company of Madison County, M. T.

It will be observed that the note, as a distinctive separate obligation, is nowhere lost sight of in this agreement. The rate of interest is changed from five to three per cent per month, but the note is still to bear interest and to be in full force and operation for that and all other purposes. The time of the payment is delayed for one year, but at the end of the year the amount due thereon could have been demanded, and can it be doubted that a suit thereon could have been instituted and payment enforced, notwithstanding this agreement?

The full force and effect of this agreement was, to extend the time for the payment of the note, and to reduce the rate of interest thereon, and it operates simply as collateral security to the note. The note was due. The plaintiff promised to delay payment, but, in consideration of such promise, he was to receive a mortgage against Allen, and the note against Vanderlip and McEvily was to be paid.

The agreement operates to place in the hands of the defendants the means whereby to pay the note, and every purpose and intent thereof was to create security for the payment of the note, and if there has been a failure to perform this agreement by the plaintiffs, on their part, an action could be maintained against them thereon, but whether the agreement itself fixes the measure of damages, and whether it could be set up as an equitable defense to this note, it is not now necessary to determine.

The agreement operates to delay the payment of the note, and where the promisee of a note, payable at a day certain, contracts at the time the note is given or after it has become due, not to demand payment of it until a certain time after its maturity, such contract is a collateral promise for the breach of which, if there be a legal consideration, an action may lie, but it will not bar an action on the note when due by the terms of it. 4 Mass. 414. An agreement, to operate as a merger of a note, must be such a one as by its terms or by its legal intent and meaning would defeat a right of action on the note.

This agreement was offered and received in evidence to support the allegation of the answer, that the agreement released defendants from all liability on the note. We are of opinion that the agreement does not operate to that extent, and that it does not support the allegation of the answer ; and, upon the principle that the evidence offered must correspond with the allegations, and be confined to the point in issue, the agreement was improperly received in evidence under the pleadings in the case.

It may be proper to remark, that although the damages that may have resulted to the defendants, by a breach of

this contract on the part of the plaintiffs, may have been set up as an offset to the note (a question we do not think necessary to decide), yet, there are no allegations of damages, for the breach of said contract in the answer, which would entitle the defendants to prove the same.

The order overruling the motion for a new trial is set aside, judgment reversed, and cause remanded for further proceedings.

*Exceptions sustained.*